RECEIVED
IN ALEXANDRIA, LA.

MAR 2 5 2010

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

TONJHA HICKS,                          CIVIL ACTION
            Appellant                  NO. CV09-0625-A

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER        JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                    MAGISTRATE JUDGE JAMES D. KIRK
            Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Tonjha Hicks ("Hicks") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") (protective filing date June 1, 2007) (Tr. pp. 122, 127) on June 25, 2007 alleging a disability onset date of June 15, 2006 due to depression, bipolar disorder, anxiety, panic attacks, and "suicidal" (Tr. p. 152).  Those applications were denied by the Social Security Administration ("SSA") (Tr. pp. 76-78).

A de novo hearing was held before an administrative law judge ("ALJ") on August 27, 2008 at which Hicks appeared with her attorney, a vocational expert ("VE"), and a medical expert ("ME"). The ALJ found that, although Hicks suffers from "severe" affective

disorder (bipolar), chronic low back pain, and alcohol and drug dependence (Tr. p. 25), she has the residual functional capacity to perform light work except as limited by her bipolar disorder, history of suicide attempts, alcohol and drug abuse, and marked impairments in social activities (Tr. p. 30), and can perform work which exists in significant numbers in the national economy such as food service worker/kitchen helper or assembly line worker (Tr. p. 30).  The ALJ concluded that Hicks was not under a disability at any time through the date of her decision on October 23, 2008 (Tr. p. 31).

Hicks requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Hicks next filed this appeal for judicial review of the Commissioner's final decision.  Hicks raises the following grounds for relief on appeal:

> 1.    The ALJ's determination that Drug Abuse and Alcoholism were material to a finding of disability was erroneous and contrary to the SSA's internal procedures.
>
> 2. Alternatively, the ALJ's residual functional capacity assessment at Step 4 was erroneous, resulting in the ALJ's failure to sustain her burden at Step 5 of the sequential evaluation process.

The Commissioner filed a brief in opposition to Hicks' appeal (Doc. 12), to which Hicks' replied (Doc. 13).  Hicks' appeal is now before this court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an

2

application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

### Summary of Pertinent Facts

### 1. Medical Records

In November 2006, Hicks, then 37 years old, was admitted to the Willis Knight South Hospital with a wrist laceration

3

following an argument with her husband, and was diagnosed with polysubstance dependence and bipolar disorder(Tr. p. 188), as well as exogenous obesity and mild viral bronchitis (Tr. p. 206). Hicks' psychiatric evaluation, by psychiatrist Brian D. Baibak, noted the laceration to her wrist, an episode of major depression, marital difficulty, and cocaine and alcohol abuse (Tr. p. 208). Hicks admitted to chronic dependence on alcohol and cocaine and a history of mood swings lasting three to four days (Tr. p. 188). Hicks was released after two days and was prescribed a limited supply of lithium as a mood stabilizer (Tr. pp. 188; 387-409).

Hicks was readmitted to the hospital on August 4, 2007 with self-inflicted lacerations to both wrists (Tr. pp. 301-303; 361-377). Hicks was diagnosed with hypokalemia (potassium deficiency), lacerations, obesity, and asthma (Tr. p. 303). Hicks remained in the hospital through August 14, 2007 (Tr. p. 303).

Hicks was given a mental status examination on September 17, 2007 by Thomas E. Staats, a clinical neuropsychologist (Tr. pp. 307-309). Hicks reported having panic attacks and avoiding leaving home, having memory problems, depression and crying spells, having bipolar disorder with breakthrough rapid-cycling mood swings, episodic binge alcohol relapse, and a history of polysubstance dependency in remission; Hicks was not abusing drugs at that time (Tr. pp. 307-309). Hicks' thinking was adequate with regard to content and reality, her understanding and memory were intact, sustained concentration were marginal, persistence was fair, social interaction was poor, and adaptation was poor (Tr. p. 309). Hicks'

4

prognosis was guarded to poor, but she was considered competent to manage her funds (Tr. p. 309). Hicks' diagnosis at Axis I was bipolar disorder, the most recent episode was mixed, generalized anxiety disorder, panic disorder with agoraphobia, alcohol dependence in episodic relapse, and a history of polysubstance dependence in remission (Tr. p. 309).

A psychiatric review technique form and a mental residual functional capacity assessment were completed in October 2007 by psychologist Cheryl Marsiglia, Ph.D. after she reviewed Hicks' medical records (Tr. pp. 310-326). Marsiglia found Hicks has the following functional limitations: (1) moderate difficulty in maintaining social functioning, (2) moderate difficulty in maintaining concentration, persistence, or pace, and (3) a mild limitation in activities of daily living (Tr. p. 320). More specifically, Marsiglia found Hicks has moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors, in the ability to ask simple questions or request assistance, and in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, moderate limitations in her ability to carry out detailed instructions, in the ability to maintain attention and concentration for extended periods, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and a moderate limitation in her ability to respond appropriately to

changes in the work setting (Tr. pp. 324-325).

On November 5, 2007, Hicks intentionally took a drug overdose of Depakote and Prozac; she was taken to the emergency room and diagnosed with polysubstance ingestion in a suicide attempt, major depression, and bipolar disorder (Tr. pp. 349-353). Hicks was transferred to the Behavioral Medicine Department, where she was involuntarily hospitalized by psychiatrist Dr. John Richie, and received individual psychiatric treatment with medication adjustment and management, group therapy, and family therapy (Tr. pp. 339-340). Hicks was discharged from Behavioral Medicine on her own request on November 12, 2007 with diagnoses of manic bipolar disorder, alcohol abuse, personality disorder NOS, and status post polysubstance ingestion with Depakote and Prozac® in a suicide attempt (Tr. pp. 339-344).

In January 2008, Hicks was treated by Dr. Jeffrey Tanita, a family medicine doctor, for complaints of severe middle to low aching back pain in the midline for several years (Tr. p. 442). She reported recent low back pain off and on for several weeks (Tr. p. 423). Hicks stated she had aggravated her back pain by lifting patients at Pinecrest years ago (Tr. p. 442). Hicks was given a Toradol injection for pain (Tr. pp. 433, 460), which did not really help (Tr. p. 423). An MRI was essentially negative (Tr. p. 418). Hicks was also diagnosed with hypercholesterolemia and prescribed Zocor (Tr. pp. 423, 434, 451).

2. August 27, 2008 Administrative Hearing

Hicks testified at her hearing that she is 39 years old, 5'5"

6

tall, and weighs about 210 pounds (Tr. p. 54).  Hicks testified that she lives with her father, youngest son, and younger brother (Tr. p. 38).  Hicks testified that she stopped drinking for her youngest son (Tr. p. 38).  Hicks testified that she has been with her husband since she was 15 years old and intends to divorce him when she completes the separation period (Tr. p. 39).

Hicks testified that she last worked in 2006 as a cashier; most of her work experience has been as a cashier or a short order cook (Tr. pp. 39-40).  Hicks testified that she worked for Pinecrest Developmental Center as a registered training specialist for six years, doing "total care" for the invalids in the hospital (Tr. p. 40).  Hicks testified that she received on the job training at Pinecrest (Tr. p. 41).  Hicks dropped out of high school six months before graduating due to pregnancy, but earned a GED the same year (Tr. p. 49).  Hicks testified she can read, write, and do simple arithmetic (Tr. p. 49).

Hicks testified that she did not do any lifting when she was a cashier because her back was "not in good shape" after working at Pinecrest and lifting invalid patients (Tr. p. 50).  Hicks testified that she has a lot of back pain and her back hurt when she got out of bed that morning (Tr. p. 50).  Hicks testified that she has seen a doctor about her back pain but she thinks he was a "quack" (Tr. p. 50).  Hicks has also had a diagnosis of coronary artery disease; when she had chest pain, she failed a stress test and some other test, and her angiogram showed three blockages (Tr. p. 51).  Hicks testified she does not see a doctor for her CAD

because doctors tend to think she only wants to get pain medication and do not take her seriously (Tr. p. 51).

Hicks testified that she began abusing alcohol and drugs when her oldest son (now 21 years old) was taken away from her by her parents when he was two years old (Tr. p. 41). Hicks testified that she has never felt happy or normal, but the first time she saw a medical professional for her mental health problems was after the first time she tried to kill herself (Tr. p. 42). Hicks testified that she would never hurt anyone else, but she has a very bad temper (Tr. pp. 42-43). Hicks testified that she gets angry and curses at people; however, she has never done that at work (Tr. p. 43). Hicks testified that nothing in particular "sets her off"; she is scared to leave her house because she does not know how she will react around people (Tr. p. 43). Hicks testified she does not go out and do things (Tr. p. 43), but she goes to the grocery store and the Dollar Store with her father (Tr. p. 44). Hicks testified that, on an average day, she watches TV, takes care of the dogs, washes dishes, washes clothes, and cooks (Tr. p. 44).

Hicks testified that she takes lots of medicine every day, but always feels depressed and cries often for no reason (Tr. p. 45). Hicks testified that sometimes she has trouble sleeping for two or three days despite taking sleeping pills, then will sleep all day for a few days; this cycle alternates (Tr. pp. 45-46). Hicks testified her energy level comes and goes in cycles, too, depending on her mood (Tr. p. 46). Hicks testified she talks herself out of a bad mood because she is the only person who helps her father (Tr.

pp. 46-47). Hicks testified she often feels anxious and nervous, so she bites her fingernails and cannot sit still (Tr. p. 47). Hicks testified that, when she is depressed, she may sleep or sit in front of the TV for days and forget to bathe (Tr. p. 47). Hicks testified that her father drives her wherever she needs to go, but she has a driver's license for emergency use (Tr. p. 48). Hicks can drive both an automatic and a standard transmission vehicle (Tr. p. 54).

Hicks testified that she does not see a psychiatrist or psychologist on a regular basis because there is not one where she lives (Keithville in Caddo Parish) that will see people her age with a Medicaid card, and she cannot pay cash (Tr. p. 48). Hicks testified that she had three psychiatric admissions in one nine month period due to three suicide attempts (Tr. p. 48); all were associated with alcohol and drug abuse (Tr. p. 55). Hicks testified she was admitted to the psychiatric unit involuntarily (Tr. p. 49). Hicks testified she has never been committed when alcohol and drugs were not a factor (Tr. p. 55).

Rick Adams, a clinical psychologist, testified he had reviewed the medical evidence in the case and listened to Hicks' testimony (Tr. p. 55). In response to questions by Adams, Hicks testified that she still has racing thoughts, even though she has not used cocaine in over a year and has not had alcohol for a month (Tr. p. 56). Hicks said she had alcohol one time a month ago and before that she did not drink for four months (Tr. p. 56). Hicks testified that she promised herself and her youngest son that she

would stop drinking (Tr. pp. 57-58).

Hicks testified that she cannot work because she is scared to be around people because they might make her mad, she has panic attacks, and she is scared of a lot of things, like heights and speed (Tr. p. 53). Hicks testified that, because she was a "functioning alcoholic," she did not miss work due to her drinking (Tr. p. 57). However, now she would miss work because she has trouble leaving her house (Tr. pp. 57-58). Hicks testified that she only leaves her house once in a while with her father, if he needs her to go somewhere with him, because she does not like to be around people; Hicks said people make her nervous and upset (Tr. p. 58).

Adams testified that the medical evidence shows Hicks has a mood disturbance and an anxiety disorder, but noted there is not much objective documentation of Hicks' problems between her hospitalizations, when her problems were not acute, so it is more difficult to discern her impairments on a day to day basis (Tr. p. 59). Adams noted that Staats' evaluation was made when Hicks was not in an acute crisis, and Staats found her to have substantial problems with social interaction, some problems with sustained concentration, and problems with adaptation (Tr. p. 59).

Adams found Hicks has a marked impairment in the social domain, and has some problems with concentration (Tr. p. 59). Adams interpreted Staats' finding of marginal overall concentration to mean a moderate impairment in her overall concentration (Tr. pp. 59-60). Adams concluded that Hicks' mental impairments fall "just

10

short of a listing" because her impairments are not marked in the areas of activities of daily living and difficulty maintaining concentration, persistence and pace (Tr. pp. 59, 63). Adams stated that Hicks has bipolar disorder and general anxiety disorder which are exacerbated by substance abuse, and that her overall status and social activities would "likely improve" if she did not use illegal drugs or alcohol on a sustained basis and took her prescribed medications as directed (Tr. pp. 61, 64). Adams testified that Hicks had reported not taking her medication at times because she could not afford them (Tr. p. 65).

Adams also testified that Hicks' anxiety could be treated with medication and therapy to improve her fear of leaving home; although Hicks' is receiving anti-anxiety medication, she is not receiving therapy to specifically help her overcome her fear of leaving home (Tr. p. 62). Adams testified that it takes a longer period of time than just a month off being off alcohol for a person to show a sustained improvement, and stated again that Hicks needed psychological treatment for her problems with anxiety that could help her not be so afraid to leave the house (Tr. p. 64).

Adams testified that Staat had noted during his interview with Hicks that she was disheveled, tense, not making good eye contact, had trouble relating to him in a general sense, interacted poorly on a one-to-one basis, had a strong odor of cigarette smoke, was restless, and had episodic, slightly rapid speech (Tr. pp. 60-61). However, Adams found that, at the administrative hearing, Hicks answered the questions directly and responsibly, made good eye

11

contact, and seemed to interact adequately (Tr. pp. 60-61). Adams testified that Hicks may have become comfortable enough with her attorney to interact better with her than with a stranger such as Staats (Tr. p. 65).

Adams also testified that, although Hicks was not intoxicated during her interview with Staats, Staats found Hicks had a marked social impairment (Tr. p. 66) and had three periods of total decompensation within a short time, although he thought they were of short duration, rather than extended duration as required by the listing, and did not find it clear that those decompensation periods were associated with alcohol usage (Tr. p. 66). Adams explained his finding that Hicks' has a marked impairment in the social domain is based on Dr. Staats' opinion and Hicks' comments about easily becoming very irritable and angry, being impulsive, having thoughts of hurting others, and not attending to work (Tr. p. 67). Adams stated that Hicks' suffers from depression, bipolar disorder, and anxiety disorder with panic attacks, but her complaints of agoraphobia are not well documented; the documentation indicated a mood disorder with anxiety symptoms (Tr. p. 68). Finally, Adams testified that total abstinence from illegal drugs and alcohol would not cure Hicks' bipolar disorder, anxiety disorder, and agoraphobia (Tr. pp. 74-75). Adams stated that he had reservations about Hicks' ability to be stable on a day to day basis in a job situation (Tr. p. 59).

George Hearn testified as the vocational expert ("VE") (Tr. p. 68). Hicks told the VE that her main work experience has been as

12

a cashier working for a variety of employers, from 1984 through 2006 (Tr. p. 69). The VE testified that Hicks' work as a cashier was light, semi-skilled, and her work at Pinecrest as an aide was medium, semi-skilled (Tr. p. 70).

The ALJ posed a hypothetical question involving a person of Hicks' age, height, weight, education, and work experience, who can drive but only drives in cases of emergencies, can read, write and do simple arithmetic, and has the residual functional capacity to perform light work except as limited by nonexertional impairments of bipolar disorder, general anxiety disorder, alcohol dependence, polysubstance dependence, a history of suicide attempts which involved occasions of alcohol and/or drug toxicity, and a marked impairment in social functioning (Tr. pp. 70-71). The VE testified that such a person could do light work which did not involve public interaction such as kitchen helper/food preparer (300,000 jobs nationally and 49,000 jobs in Louisiana), or assembly line worker (800,000 jobs nationally and 5,000 jobs in Louisiana). The VE further testified that the person could not perform those jobs if she were drug or alcohol dependent (Tr. p. 72). The VE testified that a person who misses work because they sleep all day would not be able to keep a job, lack of sleep would impair the person's work performance, and suicidal thoughts and a fear of other people would affect the person's ability to work around other people in a kitchen (Tr. pp. 72-73). Also, an impaired ability to focus and concentrate, and occasional shaking and agitation would affect the ability to do assembly line work, particularly with regard to

13

consistency, so such a person probably would not be able to keep that job (Tr. pp. 72-73).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Hicks (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. <u>Greenspan</u>, 38 F.3d at 237.

In the case at bar, the ALJ found that Hicks has not engaged in substantial gainful activity since June 15, 2006 (Tr. p. 24) and

14

that she has severe impairments of affective disorder (bipolar), anxiety disorder, chronic low back pain, and alcohol and drug dependence (Tr. p. 25), but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 26). The ALJ also found that Hicks is unable to perform her past relevant work as a cashier and an aide (Tr. p. 29).

At Step No. 5 of the sequential process, the ALJ further found that Hicks has the residual functional capacity to perform the full range of light work except as reduced by her bipolar disorder, history of suicide attempts, alcohol and drug abuse, and marked impairment in social activities (Tr. pp. 29-30). The ALJ found that the claimant is a younger individual with at least a high school education[1] and that transferability of work skills is not relevant (Tr. p. 29). The ALJ concluded that there are a significant number of jobs in the national economy which Hicks can perform, such as a food service worker/kitchen helper or assembly line worker and, therefore, Hicks was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on October 23, 2008 (Tr. pp. 30-31).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists

---

[1] Hicks actually has a high school equivalent education, or a GED (Tr. p. 156).

15

in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a

"conspicuous absence of credible choices" or "no contrary medical evidence."   Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

## Hicks' Drug and Alcohol Abuse

Hicks argues the ALJ's determination that drug abuse and alcoholism were material to a finding of disability was erroneous and contrary to the SSA's internal procedures.  Hicks contends the ALJ should have first determined whether she is disabled, then considered whether drug abuse or alcoholism is material to the finding of disability, citing Program Operations Manual System ("POMS") § DI 90070.050.  Alternatively, Hicks argues the ALJ's residual functional capacity assessment at Step 4 was erroneous, resulting in the ALJ's failure to sustain her burden at Step 5 of the sequential evaluation process.

First, it is noted that the Social Security Administration's Program Operation Manual System ("POMS") is a policy and procedure manual that employees of the Department of Health and Human Services use in evaluating Social Security claims.  It does not have the force and effect of law, but is persuasive.  Davis v. Sec'y of Health and Human Serv., 867 F.2d 336, 340 (6th Cir. 1989).  See also Christensen v. Harris Cty., 529 U.S. 576, 587, 120 S.Ct. 1655, 1662-1663 (2000).  Therefore, the ALJ's failure to follow internal procedures does not, by itself, merit reversal of the Commissioner's decision.

Second, Section 105 of the Contract with America Advancement

17

Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-55 (1996), amended pertinent portions of the Social Security Act to prohibit the award of DIB and SSI to individuals disabled by alcoholism or drug addiction.  See 42 U.S.C. §§ 423(d)(2)(C), 1382(c)(3)(J). Under the amended regulations, the key factor the Commissioner must examine in determining whether drugs and/or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if she stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).

Under this regulation, the ALJ must (1) evaluate which of Hicks' current physical and mental limitations would remain if claimant stopped using alcohol and (2) then determine whether any or all of Hicks' remaining limitations would be disabling.  The claimant is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction. Thus, the claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his/her disability.  Drug or alcohol abuse is material to a disability if the ALJ would not find the claimant disabled if the claimant stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1). Evidence sufficient to support an ALJ finding on this issue is strongly dependent upon the facts in each case.  Brown v. Apfel, 192 F.3d 492, 498-499 (5th Cir. 1999).

Hicks' burden was to show a medically determinable impairment which caused her to be unable to engage in substantial gainful activity.  Greenspan, 38 F.3d at 237; 20 C.F.R. §423(d)(1)(A) and

18

(d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A).  In this
case, Hicks had the burden of proving that her remaining
limitations are disabling independent of drug or alcohol abuse.
Brown, 192 F.3d at 498.

Hicks has shown she suffers from bipolar disorder and an
anxiety disorder and that, if she quit drinking and taking drugs
entirely, she would still suffer from those disorders; Dr. Adams
testified that merely discontinuing the alcohol and drugs will not
cure the bipolar and anxiety disorders.

However, the ALJ erroneously found that Hicks' alcoholism and
drug addiction are "inextricably associated with the claimant's
mental impairment" because all of her hospitalizations were the
result of alcohol or cocaine toxicity and suicidal attempts.  The
mental health medical evidence, particularly the opinions of the
psychiatrists and psychologists, clearly shows that Hicks' suffers
from bipolar disorder and an anxiety order and that those disorders
are not caused by her alcoholism and drug abuse.  Although the
effects of Hicks' mental disorders are undoubtedly exacerbated by
alcohol and drug abuse, Hicks would still have bipolar disorder and
anxiety disorder without alcohol and drugs.  In fact, the medical
reports separate the diagnoses of bipolar disorder, anxiety
disorder, and drug and alcohol dependence/polysubstance abuse.

Therefore the ALJ's determination that Hicks' bipolar and
anxiety disorders are "inextricably associated" with her drug and
alcohol dependence is not supported by the evidence.  The ALJ
failed to determine whether Hicks' bipolar and anxiety disorders

are disabling by themselves, without the effects of drug and alcohol.

However, there is sufficient evidence in the record for this court to find that Hicks obviously suffers from bipolar and anxiety disorders which are disabling by themselves.  The ALJ employed a psychologist, Adams to assist her with that determination.   Adams stated that Hicks' suffers from depression, bipolar disorder, and anxiety disorder with panic attacks, that total abstinence from illegal drugs and alcohol would not cure her mental disorders, and that she needs more treatment for her anxiety disorder.  Adams testified he had reservations about Hicks' ability to be stable on a day to day basis in a job situation[2] and stated Hicks needed more treatment for her anxiety disorder.

Therefore, substantial evidence does not support the ALJ's/Commissioner's finding that Hicks is not disabled.  The

---

[2] The ALJ also failed to make any findings as to Hicks' ability to find and maintain employment.  In Singletary v. Bowen, 798 F.2d 818, 822 (5ᵗʰ Cir. 1986), the Fifth Circuit held that a finding that a clamant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time. Therefore, the agency must determine that the claimant can "obtain and maintain employment".  Singletary involved a claimant with mental impairments including schizophrenia; the SSA's determination that the claimant was not disabled because he could obtain employment was reversed for failure to find he could also maintain that employment.  The same conclusion was reached by the Fifth Circuit in Leidler v. Sullivan, 885 F.2d 291, 292-993 (5ᵗʰ Cir. 1989) (SSA's determination that the schizophrenic claimant was employable was inadequate where the record did not reflect his ability to hold employment over a sustained period), and in Moore v. Sullivan, 895 F.2d 1065, 1069-70 (5ᵗʰ Cir. 1990) (record did not reflect a conclusion that schizophrenic claimant would be able to maintain employment for a significant period of time).

evidence shows that Hicks is unable to work due to her bipolar and anxiety disorders and that she is entitled to benefits.

However, although Hicks' alleged disability onset date is June 15, 2006, the date of the first medical record in the administrative transcript is November 25, 2006.   Properly corroborated retrospective medical diagnoses constitute relevant evidence to establish a disability onset date, as well as corroborating lay evidence.   Likes v. Callahan, 112 F.3d 189, 191 (5th Cir. 1997).  Also, Barraza v. Barnhart, 61 Fed. Appx. 917 (5th Cir. 2003); Orphey v. Massanari, 268 F.3d 1063 (5th Cir. 2001). Further proceedings are necessary in this case to establish Hicks' disability onset date.

Therefore, Hicks' case should be remanded to the Commissioner for further proceedings to determine Hicks' disability onset date and the amount of benefits to which Hicks is entitled.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be REVERSED AND VACATED, Hicks' appeal be GRANTED, and judgment be entered in favor of Hicks.

IT IS FURTHER RECOMMENDED that Hicks' case be REMANDED to the Commissioner for further proceedings to determine her disability onset date and the amount of benefits to which she is entitled.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another

21

party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of March 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE